**Zita CABELLO BARRUETO, in her capacity as personal representative of the Estate of Winston Cabello, and in her individual capacity, Elsa Cabello, Karen Cabello Moriarty, and Aldo Cabello, Plaintiffs,**

v.

**Armando FERNÁNDEZ LARIOS, Defendant.**

No. 99–0528–CIV.

United States District Court, S.D. Florida.

Sept. 16, 2003.

Julie C. Ferguson, Miami, FL, Robert G. Kerrigan, Kerrigan, Estess, Rankin & McLeod, Pensacola, FL, Paul L. Hoffman, Bostwick & Hoffman, Santa Monica, CA, Joshua N. Sondheimer, The Center for Justice & Accountability, San Francisco, CA, Leo P. Cunningham, Nicole M. Healy, Jenny L. Dixon, Helen Heekyong Chae, Rena Chng, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, Paul L. Hoffman, Schonbrun, DeSimone, Seplow & Hoffman, Venice, CA, Susan Shawn Roberts, San Francisco, CA, for Plaintiffs.

Parker D. Thomson, Timothy Jon Norris, Gregg Howard Metzger, Thomson, Muraro, Razook & Hart, Steven Wayne Davis, Boies, Schiller & Flexner, Timothy Jon Norris, Buchanan Ingersoll, Parker D. Thomson, Hogan & Hartson, Miami, FL, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 256), filed August 29, 2003, by Defendant Armando Fernández Larios. On September 8, 2003, Plaintiffs Elsa Cabello, Karin Cabello Moriarty, Aldo Cabello, and Zita Cabello Barrueto filed a Response opposing Defendant's Motion. (D.E. 264.) On September 11, 2003, Defendant filed his Reply. (D.E. 271.) Having reviewed the Motion, the Response, the Reply, and the record, the Court finds as follows.

### I. Introduction

This case involves allegations that Defendant participated in extrajudicial killing, torture, and crimes against humanity in Chile after President Salvador Allende was removed from power and replaced by a military junta in a *coup d'etat* headed by General Agosto Pinochet on September 11, 1973.[1] Plaintiffs are the family members of Winston Cabello, an economist under the Allende government, who was allegedly killed in Copiapó, Chile, on October 16, 1973, by agents of the Pinochet regime, as part of a series of killings and disappearances in a two-month period that became known as the "Caravan of Death."

The initial Complaint in this action was filed in February 19, 1999, by Plaintiffs the Estate of Winston Cabello; Elsa Cabello, mother of Winston Cabello; Zita Cabello Barrueto, sister of Winston Cabello, in her individual capacity and in her capacity as the personal representative for the Estate of Winston Cabello; Karin Cabello Moriarty, sister of Winston Cabello; and Aldo Cabello, brother of Winston Cabello. (D.E. 3.) Plaintiffs amended their Complaint on April 7, 1999. (D.E. 9.) On May 24, 1999, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 22) and a Motion for Summary Judgment, or, in the Alternative, a Rule 12(b)(6) Motion to Dismiss. (D.E. 19.) On August 10, 2001, the Court granted in part and denied in part the Motion to Dismiss for Lack of Subject Matter Jurisdiction, and denied the Rule 12(b)(6) Motion to Dismiss and the Motion for Summary Judgment without prejudice. (D.E. 120.) The Court found that the Estate of Winston Cabello lacked standing and dismissed all claims asserted by that Plaintiff. *Id.* However, the Court held that it had subject matter jurisdiction over the remaining claims brought under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, and the Torture Victim Protection Act ("TVPA"), Pub.L. 102–256, Mar. 12,

---

1. A thorough summary of Plaintiff's allegations is set forth in the Court's Order Denying Defendant's Second Amended Complaint, dated June 5, 2002 (D.E. 168).

1992, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note). *Id.*

The Second Amended Complaint, filed on September 17, 2001, asserts eight claims for relief under the TVPA and the ATCA, including claims of extrajudicial killing, torture, crimes against humanity, and cruel, inhuman or degrading treatment or punishment. (D.E. 127.) Defendant filed a Motion to Dismiss the Second Amended Complaint on November 2, 2001. The Court denied the Motion to Dismiss on June 5, 2002. The parties engaged in extensive discovery, but Defendant did not file a motion for summary judgment.

As trial approaches, the parties have filed a series of motions in limine, including a Motion in Limine to Preclude Expert Testimony, filed May 21, 2003, by Defendant Armando Fernandez Larios. (D.E. 200.) In that Motion, Defendant seeks to exclude the testimony of two expert witnesses proffered by Plaintiffs, Jorge Escalante, an investigative journalist, and Roberto Garretón, a human rights lawyer. *Id.* In order to resolve Defendant's Motion, the Court held a two-part evidentiary hearing consisting of legal argument and the testimony of Jorge Escalante on July 31, 2003, and the testimony of Roberto Garretón on August 18, 2003. During the August 18, 2003 hearing, Defendant contends that Plaintiff's proffered expert witness, Garretón, testified that "Chile represents a feasible alternative forum for adjudicating Plaintiffs' claims." (D.E. 256 at 5.) On August 29, 2003, less than a month before the scheduled trial date in this case, Defendant filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction, claiming that Garretón's remarks demonstrate that Plaintiffs have failed to meet the exhaustion requirement under the TVPA and that the case should be dismissed for lack of subject matter jurisdiction. *Id.* at 1.

## II. Parties' Arguments

In his Motion to Dismiss, Defendant asserts that the Court lacks subject matter jurisdiction over this matter because Plaintiffs have not exhausted all adequate and available remedies in Chile. (Mot. at 1.) Defendants point to section 2(b) of the TVPA, which states that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." Pub.L. 102–256, Mar. 12, 1992, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note). Defendant contends that the August 18, 2003 testimony of Plaintiffs' proffered expert witness, Roberto Garretón, demonstrates that there are remedies available in Chilean courts that are both adequate and available. Thus, Defendant asserts that the Court lacks subject matter jurisdiction over this matter.

In their Response to Defendant's Motion, Plaintiffs argue that the exhaustion requirement under the TVPA is not jurisdictional, rather it must be asserted by a defendant as an affirmative defense. (Resp. at 5–6.) Plaintiffs point out that Defendant did not plead failure to exhaust as an affirmative defense in his Answer to the Second Amended Complaint. *Id.* at 1. Plaintiffs assert that the Court has subject matter jurisdiction over all the claims in this action. *Id.* at 6. Moreover, Plaintiff contends that it is Defendant's initial burden to show that there are remedies available in Chile that have not been exhausted. *Id.* at 11. Plaintiffs claim that the proof offered by Defendant, the testimony of Roberto Garretón, is not sufficient to meet that burden. Plaintiffs argue that they are not required to make fruitless and futile attempts to exhaust remedies which are "unobtainable, ineffective, inadequate, or obviously futile" before filing suit under the TVPA.[2] *Id.* at 13 (quoting *Cabiri v.*

---

**2.** In support of this argument, Plaintiffs have filed the affidavits/declarations of three addi-

*Assasie–Gyimah,* 921 F.Supp. 1189, 1197 n. 6 (S.D.N.Y.1996)). Finally, Plaintiffs assert that the defense of exhaustion of remedies applies only to TVPA claims, and not to claims brought under the ATCA, including claims 2 through 8 of the Second Amended Complaint. *Id.* at 14.

In his Reply, Defendant attempts to reargue issues already settled by the Court, such as: (1) whether or not the ATCA creates a federal cause of action, and (2) whether or not Plaintiffs alleged facts in the Second Amended Complaint sufficient to state a cause of action under the TVPA or ATCA. (Reply at 2–3.) Defendant again argues that the remedies available in Chilean courts are adequate and available, citing Roberto Garretón's testimony before the Court on August 18, 2003, and a September 7, 2003 New York Times article reporting that judges in Chile appointed to investigate human rights abuses under the Pinochet regime "have opened proceedings against more than 300 military officers, including 22 generals" and that "to a large extent, judges are ignoring the amnesty law." *Id.* at 4 (quoting *Chile's Leader Presses Right Issues Softly but Successfully,* N.Y. Times, Sept. 7, 2003 (available at http://www.ny-times.com)).

### III. Standard for Granting a Rule 12(b) Motion to dismiss

Pursuant to Federal Rule of Civil Procedure 12(b), a defendant may move for dismissal of a claim based on one or more of seven specific defenses: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; (6) failure to state a claim

tional authorities on the Chilean legal system. (*See* D.E. 259, 262, 263.)

**3.** In the case of *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the

upon which relief can be granted; and (7) failure to join a party under Rule 19.

The Eleventh Circuit has clearly articulated the standard of review for a Rule 12(b) motion to dismiss:

"The standard of review for a motion to dismiss is the same for the appellate court as it is for the trial court." *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir. 1990). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.), *cert. denied,* 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998). "On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." *Stephens,* 901 F.2d at 1573.

Where a motion to dismiss is made on the basis of lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), subject matter jurisdiction may be attacked either facially or factually. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir. 1990). A court treats a facial attack on the Complaint like all other Rule 12(b) motions to dismiss, looking to see whether a plaintiff has sufficiently alleged a basis for subject matter jurisdiction, were the allegations in the Complaint taken as true. *Id.; Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).[3] A factual attack, however, chal-

Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

lenges "the existence of subject matter jurisdiction in fact," and requires that the Court examine materials outside of the pleadings, such as testimony and affidavits. *Id.* Thus, where a defendant factually attacks the existence of subject matter jurisdiction, the Court may look beyond the complaint to determine whether such jurisdiction exists.

## IV. Analysis

█ In general, a motion to dismiss must be made "before pleading if a further pleading is permitted." Fed.R.Civ.P. 12(b). In the instant case, the Court has already decided two separate Motions to Dismiss and Defendant filed his Answer to the Second Amended Complaint on February 25, 2003. (D.E. 181.) Moreover, the court-ordered deadline for the filing of dispositive pretrial motions in this case is long since past.[4] However, Rule 12(h)(3) states that a court must dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Fed.R.Civ.P. 12(h)(3). Thus, before considering the merits of Defendant's exhaustion argument, the Court must decide the threshold question of whether or not the exhaustion requirement under the TVPA is jurisdictional. If it is jurisdictional, then Defendant's Motion is properly brought and the court may consider the merits of his argument. However, if the Court finds that Plaintiffs are correct and the statutory exhaustion requirement is an affirma-

tive defense unrelated to subject matter jurisdiction, then Defendant's Motion shall be denied as untimely under the Court's Order Establishing Pretrial Deadlines. (D.E. 150.)

In his Motion to Dismiss, Defendant does not cite any authority to support his claim that the exhaustion requirement under the TVPA is jurisdictional, other than the language of the statute itself. Section 2(b) of the TVPA directs a court to "decline to hear" a claim under the statute if a claimant "has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." Pub.L. 102–256, Mar. 12, 1992, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note). The statutory language does not explicitly identify the requirement as jurisdictional. Plaintiff argues that, in fact, failure to exhaust is an affirmative defense under the TVPA and not a jurisdictional bar. In his Reply, Defendant skirts the jurisdictional issue altogether, relying again on the language of the statute itself. (Reply at 2–3.)

It appears that the question before the Court is one of first impression. The parties have not cited and the Court has not discovered any cases analyzing and deciding the issue of whether or not the exhaustion requirement under the TVPA is jurisdictional.[5] However, an examination of the legislative history of the statute, as well as related case law in this circuit and others, suggests that Congress did not in-

---

4. In the Court's Order Adopting Joint Scheduling Report, Setting Pretrial Conference and Trial, Establishing Pretrial and Trial Procedures, and Establishing Pretrial Deadlines (hereinafter "Order Establishing Pretrial Deadlines"), issued on January 24, 2002, the parties were ordered to file all dispositive pretrial motions by June 21, 2002. (D.E. 150.)

5. Defendants have cited a case decided by another court in this district where the court

"interpreted" defendant's argument that Plaintiffs had not exhausted local remedies as a challenge to subject matter jurisdiction. *Sinaltrainal v. The Coca–Cola Company*, 256 F.Supp.2d 1345, 1357 (S.D.Fla.2003). However, that court did not analyze the issue in any detail and it appears from the filings in that case that the question of whether or not the exhaustion requirement is jurisdictional was not a subject of debate between the parties. (*See* Case No. 01–3208–CIV–MARTINEZ, D.E. 35, 38, 42.)

tend the exhaustion requirement of the TVPA to be jurisdictional and did not draft the provision with the "sweeping and direct" language necessary to limit a district court's exercise of subject matter jurisdiction.

 The TVPA creates a cause of action for official torture and extrajudicial killing, but unlike the ATCA, it does not confer subject matter jurisdiction. *See Kadic v. Karadzic,* 70 F.3d 232, 246 (2d Cir.1995); *Al Odah v. United States,* 321 F.3d 1134, 1146 (D.C.Cir.2003) (J. Randolph, concurring). A court may exercise subject matter jurisdiction over a TVPA claim either under the "jurisdictional umbrella" of the ATCA, *Abiola v. Abubakar,* 267 F.Supp.2d 907, 910 (N.D.Ill.2003), or as a federal question pursuant to 28 U.S.C. § 1331, *Cabello v. Fernandez–Larios,* 157 F.Supp.2d 1345, 1354–55 (S.D.Fla.2001). Although the *Sinaltrainal* court interpreted a claim of failure to exhaust as a challenge to subject matter jurisdiction, 256 F.Supp.2d at 1357, other district courts have treated the same claim as non-jurisdictional. *See Abiola,* 267 F.Supp.2d at 910 (finding that the TVPA "is not a jurisdictional statute, such that failure to comply with its requirements strips the Court of jurisdiction" and that the TVPA's exhaustion requirement did not apply to claims raised under the ATCA); *Mehinovic v. Vuckovic,* 198 F.Supp.2d 1322, 1347 n. 30 (N.D.Ga.2002) (noting that the burden is on defendant to raise non-exhaustion and defendant in that case had not met the burden); *Wiwa v. Royal Dutch Petroleum Co., et al.,* 2002 WL 319887, at *17 (S.D.N.Y.2002) (holding that defendant raising "exhaustion defense" did not meet initial burden of demonstrating that plaintiffs had not exhausted "alternative and adequate" remedies in Nigeria.); *Cabiri v. Assasie–Gyimah,* 921 F.Supp. 1189, 1197 n. 6 (S.D.N.Y.1996) (noting that the legislative history of the TVPA indicates that the exhaustion requirement "was not intended

to create a prohibitively stringent condition precedent to recovery under the statute," and finding that exhaustion was not a requirement in that case).

 Moreover, the Senate Committee Report on the Torture Victim Protection Act of 1991 clearly illustrates congressional intent as to the operation of the exhaustion requirement within the statutory framework. S.Rep. No. 102–249, at 9–10 (1991). The Report states, in pertinent part:

> [A]s a general matter, the committee recognizes that in most instances the initiation of litigation under this legislation will be virtually prima facie evidence that the claimant has exhausted his or her remedies in the jurisdiction in which the torture occurred...More specifically, as this legislation involves international matters and judgments regarding the adequacy of procedures in foreign courts, the interpretation of section 2(b), like the other provisions of this act, should be informed by general principles of international law. The procedural practice of international human rights tribunals generally holds that the *respondent has the burden of raising the nonexhaustion of remedies as an affirmative defense* and must show that domestic remedies exist that the claimant did not use. Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. *The ultimate burden of proof and persuasion on the issue of exhaustion of remedies, however, lies with the defendant.*

*Id.* (emphasis added) (citation omitted). Nothing in the Senate Report is consistent with Defendant's interpretation of the ex-

haustion requirement as jurisdictional. Not only does the Report explain that the exhaustion requirement should be treated as an affirmative defense, it outlines the burden-shifting framework that courts should use in evaluating claims of failure to exhaust with the "ultimate burden of proof and persuasion" on the defendant. Such a framework is inconsistent with an interpretation of the exhaustion requirement as jurisdictional, since the ultimate burden to prove that subject matter jurisdiction exists generally lies with the plaintiff. *See Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942) ("if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof"); *see also OSI, Inc. v. United States,* 285 F.3d 947, 951 (11th Cir.2002).

Furthermore, the Senate Report notes that the exhaustion requirement under the TVPA is "generally consistent with common-law principles of exhaustion as applied by courts in the United States." S.Rep. No. 102–249, at 10. In *Weinberger v. Salfi,* 422 U.S. 749, 756–59, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court held that the "sweeping and direct" language of a provision of the Social Security Act was more than a codification of the doctrine of exhaustion and barred the exercise of subject matter jurisdiction over any such case by a federal court.[6] In *Underwood v. Wilson,* 151 F.3d 292, 294 (5th Cir.1998), the Fifth Circuit examined the language of 42 U.S.C. § 1997(c), as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), and found that provision contained "no such sweeping and direct language barring federal question jurisdiction under 28 U.S.C. § 1331." As

amended, section 1997(c) provided that "[n]o such action shall be brought ... until such administrative remedies as are available are exhausted." *Id.* The Fifth Circuit held that this was "precisely the type of language" that the Supreme Court in *Weinberger* indicated would not limit federal jurisdiction. *Id.* The Ninth Circuit came to a similar conclusion regarding the language of the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994 in *McBride Cotton and Cattle Corp. v. Veneman,* 290 F.3d 973, 978 (9th Cir.2002). In that case, the statute in question provided that "a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action ..." *Id.* (quoting 7 U.S.C. § 6912(e) (2002)). The *McBride* court found that where the statute in question does not mention, define or limit federal jurisdiction, but simply codifies the exhaustion requirement, failure to exhaust administrative remedies does not deprive the district court of subject matter jurisdiction. *Id.* at 980.

In the instant case, the language of section 2(b) of the TVPA does not mention, define or limit federal jurisdiction. It does not contain "sweeping and direct" language that is more than a codification of the doctrine of exhaustion, as was the case in *Weinberger.* In fact, the Senate Report states that section 2(b) "is generally consistent" with the common-law doctrine of exhaustion, suggesting that it was intended to be no more than a codification of that doctrine. S.Rep. No. 102–249, at 10. Moreover, the language of section 2(b) sounds even less mandatory than the language of the statutes reviewed by the

---

**6.** The Social Security Act provided in relevant part: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under (§ 1331 et seq.) of Title 28 to recover on any caim [sic] arising under (Title II of the Social Security Act)." *Weinberger,* 422 U.S. at 756, 95 S.Ct. 2457 (quoting 42 U.S.C. § 405(h)).

Fifth and Ninth Circuits in *Underwood* and *McBride*, respectively. Section 2(b) states that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies..." Pub.L. 102–256, Mar. 12, 1992, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note). The use of the phrase "shall decline to hear," rather than "shall not hear," suggests an element of discretion that was absent in the language of the statues reviewed by the *Underwood* and *McBride* courts. Thus, the Court finds that the exhaustion requirement of the TVPA is not jurisdictional and Defendant's Motion to Dismiss is hereby denied as untimely under the Court's Order Establishing Pretrial Deadlines. (D.E. 150.)

Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 256), filed August 29, 2003, by Defendant Armando Fernández Larios, is **DENIED**.