[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 00-16206
Non-Argument Calendar

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 5, 2001**
**THOMAS K. KAHN**
**CLERK**

D. C. Docket No. 99-00346-CV-J-21C

EMILIANO MONZON,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 5, 2001)**

Before ANDERSON, Chief Judge, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

The district court dismissed Plaintiff Emiliano Monzon's claim brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for lack of subject matter jurisdiction, holding that the discretionary function exception to the limited waiver of sovereignty contained in the FTCA barred Plaintiff's claim. We affirm.

## I. BACKGROUND

On May 17, 1998, Plaintiff's wife, Cirelda Monzon, and her three children drove to the beach area located at Fort Matanzas Inlet. Adjacent to the beach area is the Fort Matanzas National Monument, which is controlled by the National Park Service, a division of the Department of Interior. Sometime that afternoon one of Cirelda's daughters was caught in a rip current. While attempting to rescue her daughter, Cirelda died by drowning.

On that same day, the National Weather Service ("NWS") in Jacksonville, Florida, broadcasted two "Hazardous Weather Outlook[s] for Southeast Georgia and Northeast Florida" that mentioned rip currents, one at 5:15 a.m. and one at 3:14 p.m. These "Hazardous Weather Outlooks" were announced on the National Oceanic and Atmospheric Administration Weather Channel and were sent via long wire to vendors, whose paid subscribers included media entities.

In May 1998, it was not a routine practice of the NWS to publish

2

information on rip currents. In fact, at that time, the NWS was engaged in an experimental project with the St. Johns County Beach Patrol to determine if rip current activity could be predicted. As part of this experiment, an agent of the St. Johns County Beach Patrol provided data from the beach to NWS officials.

On May 17, 1998, an agent from NWS contacted the St. Johns County Beach Patrol to inform it that the experimental computer model suggested that the beach area would soon experience increased rip current activity. This information was never communicated to Plaintiff's wife. Approximately ten minutes later, the St. Johns County Beach Patrol received its first distress call of the afternoon.

## II. PROCEDURAL HISTORY

On April 16, 1999, Plaintiff filed this wrongful death action against the United States pursuant to the FTCA, 28 U.S.C. § 1346(b). Plaintiff's claim was that, knowing of the danger of rip currents on May 17, 1998, and knowing of the public's presence and use of the beach to go swimming, the United States breached its duty to warn Cirelda Monzon and her daughters of the hidden danger of the rip currents in the surf at the beach on that date.

On June 9, 2000, the United States filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the discretionary function exception contained in 28 U.S.C. § 2680(a) barred

3

Plaintiff's claim.  On September 26, 2000, the district court granted the United

States' motion to dismiss for lack of subject matter jurisdiction.[1]

### III.  DISCUSSION

On appeal, Plaintiff argues that the district court erred in granting the United

States' motion to dismiss.  "Because the decision we review adjudicated a motion

to dismiss, we accept all of the factual allegations in [Plaintiff's] complaint as true

and ask whether, in these circumstances, dismissal of the complaint was

appropriate."  Berkovitz v. United States, 486 U.S. 531, 540, 108 S. Ct. 1954,

1960-61 (1988).

It is well-settled that "[t]he United States, as sovereign, is immune from suit

save as it consents to be sued."  Mid-South Holding Co. v. United States, 225 F.3d

1201, 1203  (11th Cir. 2000) (quoting United States v. Sherwood, 312 U.S. 584,

586, 61 S. Ct. 767, 769 (1941)).  The FTCA waives the sovereign immunity of the

United States for certain torts committed by its employees and authorizes suits

against the United States for:

> injury or loss of property, or personal injury or death caused by the

---

[1] In the court below, the United States also argued that Plaintiff's action was barred by Florida's Recreational Use Statute, Fla. Stat. § 375.251, and the district court relied on this statute as an alternate ground for dismissal of Plaintiff's claim.  Because we hold, infra, that Plaintiff's claim was properly dismissed pursuant to the discretionary function exception to the FTCA, we need not decide whether Plaintiff's claim was barred under the Florida Recreational Use Statute.

4

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).[2]

The United States' waiver of sovereign immunity under the FTCA is limited, however, by several statutory exceptions. The relevant exception in this case is the "discretionary function" exception, 28 U.S.C. § 2680(a). Under that exception, the United States is not liable for:

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The Supreme Court has established a two-prong analysis to determine when government employee action is protected by the discretionary function exception. See Berkovitz, 486 U.S. at 536-37, 108 S. Ct. at 1958-59. First, the action must involve an element of "judgment or choice." Id. at 536, 108 S. Ct. at 1958. The

---

[2] Because we conclude, infra, that the discretionary function exception bars Plaintiff's claim, we need not decide whether the United States, if a private person, would be liable to Plaintiff in accordance with Florida law.

5

exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because under those circumstances, "the employee has no rightful option but to adhere to the directive." Id. at 536, 108 S. Ct. at 1958-59. Second, if the challenged conduct involves an element of judgment or choice, "a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. at 536, 108 S. Ct. at 1959. "The basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 536-37, 108 S. Ct. at 1959 (quoting United States v. Varig Airlines, 467 U.S. 797, 814, 104 S. Ct. 2755, 2764-65 (1984)). Therefore, the exception "protects only governmental actions and decisions based on considerations of public policy." Id. at 537, 108 S. Ct. at 1959.

The government action at issue here is the United States' failure to warn Plaintiff's wife of the danger of rip currents in the surf near the beach area at Fort Matanzas Inlet on May 17, 1998. We must first determine whether this challenged conduct by the United States involved an element of "judgment or choice." Berkovitz, 486 U.S. at 536, 108 S. Ct. at 1958.

Title 15 U.S.C. § 313 sets forth the following duties of the Secretary of

6

Commerce:

> The Secretary of Commerce shall have charge of the forecasting of weather, the issue of storm warnings, the display of weather and flood signals for the benefit of agriculture, commerce, and navigation, the gauging and reporting of rivers, the maintenance and operation of seacoast telegraph lines and the collection and transmission of marine intelligence for the benefit of commerce and navigation, the reporting of temperature and rain-fall conditions for the cotton interests, the display of frost and cold-wave signals, the distribution of meteorological information in the interests of agriculture and commerce, and the taking of such meteorological observations as may be necessary to establish and record the climatic conditions of the United States, or as are essential for the proper execution of the foregoing duties.

15 U.S.C. § 313.

It is clear that, under the statute, the Secretary of Commerce has broad discretion to determine the manner in which it will forecast the weather and issue storm warnings. Because no federal statute, regulation, or policy required the United States to warn Plaintiff's wife of the danger of rip currents in the surf, the first prong of the discretionary function exception is satisfied. Numerous cases have held that government action related to weather forecasting and the issuance of warnings are "discretionary functions." See e.g., Brown v. United States, 790 F.2d 199 (1st Cir. 1986) (concluding that, "[w]ithout question, a weather service constitutes [a discretionary function]" and holding that the United States was not liable for death of fishermen who drowned in storm which NWS failed to predict);

7

Spencer v. New Orleans Levee Bd., 737 F.2d 435 (5th Cir. 1984) (concluding that actions taken by area manager of NWS "were clearly discretionary functions" and holding that plaintiff's claim that NWS negligently failed to predict the weather and tidal conditions accurately and to warn plaintiff was barred by the discretionary function exception); Nat'l Mfg. Co. v. United States, 210 F.2d 263 (8th Cir. 1954) (where plaintiffs brought suit against the United States for negligently making or withholding weather and flood information, holding that, because the Government was "vested by the statute with wide latitude of discretion to determine whether in [its] opinion such forecasting [was] advisable," the "forecasting or omission of forecasts by the [Weather] Bureau [was] a discretionary function"); Bergquist v. United States, 849 F. Supp. 1221 (N.D. Ill. 1994) (holding that plaintiffs' claim that NWS was negligent in its forecasting and issuance of warnings regarding a tornado fell within the discretionary function exception to the FTCA).

We also conclude that the second prong of the discretionary function exception analysis – that this is the kind of judgment that the exception was designed to shield – is satisfied. See Berkovitz, 486 U.S. at 536, 108 S. Ct. at 1959. The Supreme Court has held that, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a

Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324, 111 S. Ct. 1267, 1274 (1991). "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324-25, 111 S. Ct. at 1274-75.

Cost concerns are one policy consideration that the United States takes into account in making its forecasts and issuing warnings. See e.g., 15 U.S.C. § 315 (stating that the Secretary of Commerce is "authorized to make such changes or assignment to duty in the personnel or detailed force of the National Weather Service for limiting or reducing expenses as he may deem necessary"). If the United States were required to warn individual visitors to the beach of the danger of rip currents, this could create significant cost concerns for the United States. See Brown, 790 F.2d at 204. In Brown, the First Circuit stated:

> [F]rom the standpoint of the government, the Weather Service is a particularly unfortunate area in which to establish a duty of judicially reviewable due care. A weather forecast is a classic example of a prediction of indeterminate reliability, and a place peculiarly open to debatable decisions, including the desirable degree of investment of government funds and other resources. Weather predictions fail on frequent occasions. If in only a small proportion parties suffering in consequence succeeded in producing an expert who could persuade a judge, as here, that the government should have done better, the burden on the fisc would be both unlimited and intolerable.

Brown, 790 F.2d at 204.  See also Bergquist, 849 F. Supp. at 1224 (recognizing the cost and budgetary considerations in the NWS's forecasting and warning services).

In Bergquist, the plaintiffs filed suit against the United States under the FTCA, alleging that the NWS was negligent in its forecasting and issuance of warnings regarding a tornado.  See 849 F. Supp. at 1224.  After analyzing numerous cases recognizing the discretionary nature of the NWS' function and dismissing suits based upon the NWS' failure to provide adequate or timely warnings of impending severe weather, the district court held that the acts and omissions complained of fell within the discretionary function exception to the FTCA.  See id. at 1227-28.  The court recognized three policy factors implicated in the NWS' functions:  (1) cost and budgetary policy considerations in the NWS' forecasting and warning services; (2) the general "don't overwarn" policy in which the NWS strives for "the highest rate of severe weather detection while maintaining the lowest possible false alarm rate in the issuance of warnings," and (3) the policy of vesting discretion in the forecaster.  See id. at 1228-29.

We conclude that the challenged conduct in this case – the United States' failure to warn Plaintiff's wife of the danger of rip currents in the surf – is the type of conduct that the discretionary function exception was designed to protect.  Nor does Indian Towing Co. v. United States, 350 U.S. 61, 76 S. Ct. 122 (1955), on

10

which Plaintiff relies, suggest that the United States should be subject to liability in this case. In Indian Towing, the plaintiff sued the Government for failure to maintain a lighthouse in good working order. The Government did not attempt to invoke the benefit of the discretionary function exception. Instead, it argued that the FTCA did not impose liability for the negligent exercise of "uniquely government functions." Id. at 64, 76 S. Ct. at 124. Although the Supreme Court held that the United States was subject to suit under the FTCA in that case, it did so because "the failure to maintain the lighthouse in good condition . . . did not involve any permissible exercise of policy judgment." Berkovitz, 486 U.S. at 538 n.3, 108 S. Ct. at 1959 n.3 (citing Indian Towing, 350 U.S. at 69, 76 S. Ct. at 126-27).

Thus, we hold that the United States' failure to warn Plaintiff's wife of the danger of rip currents in the surf near the beach area at Fort Matanzas Inlet on May 17, 1998, involved the exercise of discretion in furtherance of public policy considerations and that Plaintiff's claim is therefore barred by the discretionary function exception to the FTCA.

## III. CONCLUSION

Accordingly, we affirm the district court order dismissing Plaintiff's claim

for lack of subject matter jurisdiction.[3]

AFFIRMED.

---

[3] Plaintiff's request for oral argument is denied.