[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13548
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00421-WTH-PRL

NOLAN NATHANIEL EDWARDS,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 29, 2016)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Nolan Nathaniel Edwards appeals from the dismissal of his pro se complaint raising claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1).  We affirm.

## I. BACKGROUND

On April 14, 2012, Edwards, a federal prisoner confined at FCI Coleman-Medium, was sleeping on the lower bed of a triple-occupancy bunk, when he awaked from a muscle spasm in his foot.  Edwards sat up in an attempt to relieve his foot pain; in doing so, he got his neck "wedged or trapped in between the narrow space of the upper top ledge between the triple lower bunk bed."  R. at 8.  On April 16, 2012, Edwards filed an administrative grievance with the prison.  He complained the triple bunks did not allow enough space for him to sit up in bed without injuring his neck and requested to be moved to a double bunk.  The Bureau of Prisons ("BOP") denied Edwards's grievance and subsequent appeal.  In denying his appeal, the BOP explained triple bunks had been incorporated at Coleman to accommodate a significant increase in the inmate population.

Edwards complained to prison medical staff about his neck pain; several MRIs ultimately were taken.  An MRI taken on June 5, 2012, showed negative findings except for mild degenerative-disc disease.  Another MRI on October 6, 2012, showed Edwards had (1) a diffuse disc bulge and mild bilateral-neural-

foraminal stenosis[1] at C4-5; (2) a posterior-annular tear, diffuse disc bulge, and mild right and moderate left foraminal stenosis at C5-6; and (3) a posterior annular tear, diffuse-disc bulge, and mild right and moderate left foraminal stenosis at C6-7.

Edwards was examined by both prison and outside medical staff regarding his neck pain on several occasions.  On November 9, 2012, Dr. Robert Carver saw Edwards at the prison.  Dr. Carver's notes from that visit summarized the findings from Edwards's October 2012 MRI, diagnosed mild right and mild-to-moderate left neural-foraminal stenosis, and recommended pain management.  On February 6, 2013, Edwards saw Dr. Stephen Pyles at the Florida Pain Clinic.  Dr. Pyles noted Edwards's history of neck pain, reviewed the October 2012 MRI results, and diagnosed Edwards with cervical-degenerative-disc disease with disc herniation at C4-5, C5-6, and C6-7.  Dr. Pyles recommended a series of epidural-steroid injections.

Dr. Carver saw Edwards on February 21, 2013, and noted Edwards's x-rays and CT scans showed mild cervical-degenerative-joint disease, mild arthritis, and mild-to-moderate stenosis.  Dr. Carver found Edwards did not meet the criteria for the orthopedic-chronic-care clinic. On March 7, 2013, Dr. Carver again saw Edwards.  Dr. Carver's notes show Edwards complained of neck pain and stiffness

---

[1] Neural-foraminal stenosis refers to the narrowing of the neural foramen (nerve passageways) in the spine, resulting in compression of the nerves that may cause neck pain.

because of cramped conditions in his bunk bed.  Dr. Carver noted he was unable to give Edwards sleeping accommodations in the absence of objective MRI findings and referenced his previous treatment notes.  In addition, Dr. Carver recommended Edwards get out of bed to stretch as needed, take warm showers, and use over-the-counter pain relievers from the commissary as needed.  He also provided Edwards a handout on joint injections and noted Edwards needed to decide whether he wished to proceed with the approved pain-management consultation.  Edwards ultimately did elect to proceed with Dr. Pyle's proposed treatment and received a series of steroid injections in his neck in April and May 2013.

Subsequently, in July 2013, Edwards filed an administrative tort claim with the prison and alleged Dr. Carver had failed to provide him ordinary care by refusing to grant him a more suitable bunk assignment, which resulted in aggravation of his neck injury.  The BOP issued a final denial of Edwards's administrative claim in January 2014.  Meanwhile, on December 14, 2013, a third MRI on Edwards's neck was taken; it showed similar findings to the October 2012 MRI and no significant interval changes in disc bulge, central canal, and neural-foraminal stenosis.

In July 2014, Edwards filed an FTCA complaint in federal district court.  He alleged the government, through its employees, was negligent in failing to provide him with a suitable sleeping accommodation in view of his neck injury, which

caused him additional harm.  Specifically, he contended Dr. Carver had misdiagnosed him based on an incorrect reading of his initial MRI, as demonstrated by Dr. Pyles's subsequent treatment.  Edwards alleged that misdiagnosis and subsequent failure of the prison to assign him to a more suitable bunk aggravated his injuries.  Edwards further alleged he suffered nerve damage and permanent injury as a result of the government's negligence and requested damages in the amount of $500,000.

The government filed a motion to dismiss or for summary judgment.  The government first argued the district judge lacked subject matter jurisdiction to entertain Edwards's claim, because it fell within the discretionary-function exception to the FTCA.  The government argued there was no directive requiring the BOP to assign inmates to a specific bed type, and bed-assignment decisions are grounded in considerations of public policy, such as inmate safety and medical needs, security, and available resources of the facility.  Alternatively, the government argued it was entitled to summary judgment on the merits of Edwards's claim.  In support of its motion, the government attached a copy of the BOP-program statement regarding rated capacities for BOP facilities; it states the inmate population will be managed and distributed based on capacity computation formulas, security considerations, and institutional needs.

5

In response, Edwards asserted the government was not entitled to summary judgment on the merits of his claim. He also argued the government's assertion his claim was barred by the discretionary-function exception lacked merit, because his claim was a medical-negligence claim based on Dr. Carver's misdiagnosis of his neck injury; the duty of the prison to provide him suitable quarters was inextricably intertwined with the medical standard of care.

The district judge granted the government's motion and dismissed Edwards's complaint. The judge agreed Edwards's claim was a negligent-bunk-bed assignment, which was barred by the discretionary-function exception, because bunk-bed assignments involve policy choices regarding the allocation of prison resources. Consequently, the judge concluded he lacked jurisdiction to entertain Edwards's claim.

On appeal, Edwards contends the district judge erred in dismissing his complaint, because the discretionary-function exception does not apply in his case. He asserts the issue in this case is Dr. Carver's misdiagnosis of his neck injury, which prevented him from being moved to a different bunk and ultimately led to the aggravation of his injury. Because a physician's negligence does not fall within the discretionary-function exception, Edwards argues the judge should not have dismissed his complaint.

6

## II. DISCUSSION

We review de novo the dismissal of a complaint for lack of subject matter jurisdiction. *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013). The FTCA waives government sovereign immunity in tort suits for negligent or wrongful acts or omissions of government employees, acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *Monzon v. United States*, 253 F.3d 567, 570 (11th Cir. 2001). This waiver is limited by various statutory exceptions, including the discretionary-function exception. 28 U.S.C. § 2680(a). Under that exception, the government does not waive immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." *Id.* If the discretionary-function exception applies, the district judge lacks subject matter jurisdiction over the plaintiff's FTCA claim. *U.S. Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009).

We apply a two-part test to determine whether the discretionary-function exception applies. *Id.* First, we determine whether the challenged conduct is discretionary in nature or involves an element of judgment or choice. *Id.* If a federal statute, regulation, or policy dictates a particular course of action for an employee to follow, the discretionary-function exception does not apply, because

7

the employee has no choice but to follow the directive.  *Id.*  Second, if the challenged conduct does involve the exercise of judgment, then we determine whether it is the kind of judgment the discretionary-function exception was designed to shield, one grounded in policy concerns.  *See id.*  "If the decision is inherently one allowing discretion, we presume that the act was grounded in policy whenever that discretion is employed."  *Id.* (citation and internal quotation marks omitted).  Additionally, our inquiry focuses on whether the challenged act is "susceptible to policy analysis," not whether the government employee actually weighed policy considerations before taking a particular course of action.  *Cohen v. United States*, 151 F.3d 1338, 1341 (11th Cir. 1998) (citation and internal quotation marks omitted).

Although Edwards characterizes his claim as a negligent-misdiagnosis claim based on Dr. Carver's alleged misreading of his MRI results, the crux of his claim, and the primary action of which he complains, is failure of the BOP to assign him to a different bunk.  Edwards provides no federal statute, regulation, or policy that prohibits the use of triple bunks or requires prisoners with neck injuries be assigned only to single or double bunks.  The BOP retains discretion over how bed space is assigned among inmates in its facilities.  *See U.S. Aviation Underwriters,* 562 F.3d at 1299.  Furthermore, the assignment of bed space is susceptible to policy considerations, such as the facility's available resources, the safety and

8

medical needs of inmates, and the security of inmates and staff. *Id.*; *Cohen*, 151 F.3d at 1341.

It does not matter whether the discretionary decision of the BOP not to move Edwards out of a triple bunk may have been based on Dr. Carver's alleged misreading of Edwards's MRI results, because the subjective motive for the decision not to move Edwards is irrelevant to the discretionary-function analysis. *Cohen*, 151 F.3d at 1341. Consequently, the decision of the BOP not to reassign Edwards to a single or double bunk falls within the FTCA discretionary-function exception. The district judge correctly determined he lacked subject matter jurisdiction over Edwards's claim. 28 U.S.C. § 2680(a); *U.S. Aviation Underwriters*, 562 F.3d at 1299.

**AFFIRMED.**